# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDICE KAISER, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EQUITY RESIDENTIAL MANAGEMENT LLC, a Delaware limited liability company, and TRANSUNION RENTAL SCREENING SOLUTIONS, INC., a Delaware corporation,<br><br>Defendants. | Case No. 2:21-cv-10024-AB-KSx<br><br>**ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS AS MOOT** |

## I.   INTRODUCTION

Before the Court are Plaintiff Candice Kaiser's ("Plaintiff") "Motion for Remand," filed on January 14, 2022, and Defendant Equity Residential Management LLC's ("Defendant Equity") "Motion to Dismiss Plaintiff's Complaint," filed on February 2, 2022.  (See Dkt. Nos. 11, 13.)  The Motions are opposed.  (See Dkt. Nos. 16-17.)  After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing, and **VACATES**

1.

the hearings scheduled for March 11, 2022. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Having considered all of the papers filed in support of and in opposition to the Motions, the Court **GRANTS** the Motion to Remand and **DENIES** the Motion to Dismiss as moot, for the following reasons.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint in the California Superior Court for Los Angeles County against Defendants Equity and Transunion Rental Screening Solutions, Inc. on November 18, 2021. (See Not. of Removal at Exh. A ("Compl.").) Plaintiff's Complaint alleges as follows:

Plaintiff was a prospective tenant interested in renting a residential apartment in a building located at 680 South Berendo Street, Los Angeles, CA 90005, known as Radius Koreatown Apartments. (Id. ¶ 1.) Defendant Equity, "a real estate developer, property owner, property management company, and lessor of a large number of housing units across California and the United States," operated as a the manager of the Radius Koreatown Apartments. (Id. ¶¶ 6, 8.) Defendant TransUnion Rental Screening Solutions, Inc. "offered rental screening services and sold investigative consumer reports in and throughout the State of California, and continues to do so." (Id. ¶ 7.)

Defendant Equity required each prospective tenant, including Plaintiff, to submit a rental application and it charged each prospective tenant a screening fee. (Id. ¶¶ 20, 30-34.) The screening fee charged, approximately $50, "exceeds the actual out-of-pocket costs of gathering information concerning" each prospective tenant. (Id. ¶ 22.) Defendant Equity has failed and continues to fail to provide any prospective tenant "a receipt for screening fees itemizing the out-of-pocket expenses and time spent by Equity to obtain and process the information" about each prospective tenant. (Id. ¶¶ 21, 49.)

For each prospective tenant, Defendant Equity obtained at least three investigative consumer reports, including the applicant's criminal history, evictions

history, and information about the applicant's employment. (Id. ¶ 36.) Defendant Equity did not disclose to prospective tenants the "nature and type of investigative consumer reports" it would obtain, nor did it inform prospective tenants that they could obtain a copy any report prepared in connection with their application or have each applicant sign a consent or disclosure form. (Id. ¶ 38.)

Plaintiff alleges six claims in the Complaint: (1) violation of the Investigative Consumer Reporting Agencies Act, Cal. Civil Code § 1786, et seq.; (2) failure to provide receipts for tenant screening in violation of California Civil Code § 50.6; (3) unfair business practices in violation of California Business and Professions Code § 17200, et seq.; (4) negligence per se; (5) unfair business practices in violation of California Civil Code § 1950.6 and California Business and Professions Code § 17200, et seq.; and (6) negligence per se in violation of California Civil Code § 1950.6. Plaintiff styles Claims 2, 5, and 6 as class action claims. The proposed class consists of "all individuals who applied electronically to Defendant Equity for [h]ousing during the applicable statute of limitations period." (Id. ¶ 16, 29.)

Defendant Equity filed a Notice of Removal on December 30, 2021, removing the action to this Court on the basis of the Class Action Fairness Act and Plaintiff's class action claims, 28 U.S.C. § 1332(d). Specifically, in the Notice of Removal, Defendant Equity stated the Court had "original jurisdiction over the [putative] class [action] claims pursuant to 28 U.S.C. § 1332(d)(2) and [supplemental jurisdiction] over the individual claims pursuant to 28 U.S.C. § 1367(a)." (Not. of Removal at ¶ 5.)

On January 14, 2022, Plaintiff filed the Motion to Remand along with a Declaration of Joe Ollinger ("Remand Ollinger Decl."), attaching Exhibits 1-9. Defendant Equity filed Opposition thereto on February 18, 2022, as well as the Declaration of Denise Beihoffer ("Remand Beihoffer Decl."). Plaintiff filed a Reply to the Opposition on February 20, 2022.

On February 2, 2022, Defendant Equity filed the Motion to Dismiss and the Declaration of Denise Beihoffer ("Dismiss Beihoffer Decl."), attaching Exhibit A.

3.

Plaintiff filed Opposition thereto on February 18, 2022 as well as the Declaration of Joe Ollinger ("Dismiss Ollinger Decl."). Defendant Equity filed a Reply to the Opposition on February 24, 2022.

## III. LEGAL STANDARDS

### A. Motion to Remand

A defendant may remove a civil action filed in state court to federal court when the federal district court has original jurisdiction over the action. See 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1371 (9th Cir. 1987). The Class Action Fairness Act ("CAFA") vests federal district courts with original jurisdiction over class actions in which (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the total amount in controversy exceeds $5 million. See 28 U.S.C. § 1332(d); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020-21 (9th Cir. 2007).

A removing defendant bears the burden of establishing federal jurisdiction. See Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). To meet this burden as to the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

Only "when the plaintiff contests, or the court questions, the defendant's allegation" must the defendant submit evidence to establish the amount in controversy by a preponderance of the evidence. Id. at 89 (citing 28 U.S.C. § 1446(c)(2)(B)); see Ibarra, 775 F.3d at 1195; Harris v. KM Industrial, Inc., 980 F.3d 694, 699 (9th Cir. 2020) ("When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."). The Court should "treat the removal petition as if it had been amended to include the relevant information contained in the later-filed

affidavits." Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969); see also Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal."). The plaintiff may submit evidence to the contrary. Ibarra, 775 F.3d at 1198 (citing Dart Cherokee, 574 U.S. at 89). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Id. at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). Once "both sides submit proof . . . the court then decides where the preponderance lies." Ibarra, 775 F.3d at 1198. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id. at 1197.

### B. Motion to Dismiss

Federal Rule of Civil Procedure 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Labels, conclusions, and "a formulaic recitation

of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Lee, 250 F.3d at 689-90.

A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by amendment. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend, however, "is properly denied . . . if amendment would be futile." Carrico v. City and Cty. of S.F., 656 F.3d 1002, 1008 (9th Cir. 2011).

**IV.  DISCUSSION**

    **A.  Motion to Remand**

The parties do not dispute that Plaintiff's three class action claims are brought on behalf of at least 100 members and the parties are at least diverse minimally. The only dispute is whether the $5 million CAFA amount in controversy is satisfied.

The amount in controversy is not the amount of damages a plaintiff will likely recover, see Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a prospective assessment of [a] defendant's liability," Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 401 (9th Cir. 2010). Rather, it "is simply an estimate of the total amount in dispute." Id. Thus, the amount in controversy merely "reflects the maximum recovery the plaintiff could reasonably recover." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019).

To determine the amount in controversy, courts first look to the allegations in the complaint. Ibarra, 775 F.3d at 1197. Courts can accept a plaintiff's good faith allegation of the amount in controversy. Id. Where damages are unstated in a plaintiff's complaint, however, "the defendant seeking removal has the burden of establishing that the aggregate amount in controversy from the plaintiff's claims exceeds $5,000,000. Id.

Here, Plaintiff's Complaint does not allege the amount of damages sought nor does it quantify the amount in controversy. Defendant Equity, however, contends the amount in controversy exceeds $5 million.

> **1. Defendant Equity has not established by a preponderance of the evidence that the amount in controversy exceeds $5 million**

In the Notice of Removal, Defendant Equity calculates the amount in controversy to be at least $5 million because Plaintiff seeks restitution in Claim 5 of approximately $5,467,500 ($40.50 per class member for a class of 135,000) plus "injunctive relief that would require [Defendant] Equity to expend considerable resources delivering receipts to more than 135,000 people who Plaintiff alleges did not receive receipts" in addition to Plaintiff's Claim 6, which seeks attorneys' fees that Defendant Equity calculates as valued at 25% of the restitution amount, bringing the total amount in controversy to at least $6,834,375. (See Not. of Removal at ¶¶ 15-16.)

In the Motion to Remand, Plaintiff argues Defendant Equity's calculation is overinflated and instead calculates the amount in controversy to be at a maximum

$4,914,512 but more likely $1,803,237.50. (See Mot. to Remand at 2, 7.) Both parties submit evidence in support of their calculations.[1] Having considered the parties' arguments and evidence, the Court finds Defendant Equity has not satisfied its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million.[2]

          **a.    Defendant Equity's restitution calculation is based on an unreasonable assumption**

As stated supra, in the Notice of Removal, Defendant Equity calculated each class member's restitution claim would be valued at approximately $40.50. (Not. of Removal ¶ 15.) Defendant Equity arrived at this number by calculating the average application fee charged by Defendant Equity during the relevant time period ($49) minus its out of pocket costs of "no more than $8.50 to obtain a credit report or other reports in connection with each application fee collected by Equity." (Id. ¶ 14.)

In the Motion to Remand, Plaintiff contends Defendant has failed to account for any staff time spent to process application information for any of the proposed class members and instead Defendant Equity unreasonably values that time at $0 per application, thus overcalculating Plaintiff's restitution damages.[3]

---

[1] The Court treats Defendant Equity's Notice of Removal as amended by and including the evidence Defendant Equity submitted in support of its Opposition. See Willingham v. Morgan, 395 U.S. at 407 n.3.

[2] The Court considers only whether Plaintiff's class action claims (Claims 2, 5, and 6) satisfy the CAFA $5 million amount in controversy requirement. See Yocupicio v. PAE Group, LLC, 795 F.3d 1057, 1062 (9th Cir. 2015) (considering whether the class action claims when alleged alongside non-class claims satisfied the CAFA amount in controversy requirement and concluding they did not and the amount in controversy regarding the non-class claims could not be used to satisfy the CAFA jurisdictional amount).

[3] Plaintiff also argues Defendant Equity's $8.50 cost per credit report is unreasonable because it is much lower than other property management companies are charged and likely does not account for an annual subscription fee. In Opposition, however, Defendant Equity sets forth exactly the costs it pays to obtain each credit report, including its annual subscription fees. The Court is satisfied, at least at this early stage of the litigation, that the preponderance of the evidence sufficiently supports

8.

1    In Opposition, Defendant Equity claims Plaintiff's allegations did not give it
2 notice that Plaintiff is seeking restitution of Defendant Equity's screening fee minus
3 "both the actual out of pocket costs incurred in obtaining a credit report and 'the
4 reasonable value of time spent by the landlord or his or her agent in obtaining
5 information on the applicant.'" (Opp'n at 4 (emphasis in original).) Defendant Equity
6 argues "Plaintiff cannot use her Motion to Remand to, in effect, amend the allegations
7 in the Complaint, solely to defeat removal." (Id.)
8    The Court disagrees with Defendant Equity's contentions in this regard.
9 Instead, the Court concludes the Complaint unequivocally states a claim for restitution
10 to be calculated as follows: Defendant Equity's screening fee minus all of Defendant
11 Equity's out of pocket costs, including the costs to obtain the applicant's credit report
12 and the reasonable value of the time spent to obtain information on each applicant.
13    In Claim 5 of the Complaint, Plaintiff alleges she seeks recovery of restitution
14 in the amount of "the fees and deposits paid in connection with [each class member's]
15 application to Defendant Equity and DOE Defendants for an apartment, to the extent
16 those fees and deposits exceeded the statutory maximum." (Compl. ¶ 102.) Plaintiff
17 specifically alleges Defendant Equity and DOE Defendants "failed – and continue to
18 fail – to provide, personally or by mail, any Plaintiff or Class Member a receipt for
19 screening fees itemizing the out-of-pocket expenses and time spent by Equity or its
20 agents to obtain and process the information about the Plaintiff or Class Member."
21 (Id. ¶ 96.)
22    Plaintiff's Claim 5 tracks the language used in California Civil Code §
23 1950.6(b), which explains:
24    The amount of the application screening fee shall not be greater than the actual
25    out-of-pocket costs of gathering information concerning the applicant,
26    including, but not limited to, the cost of using a tenant screening service or a

---

28 Defendant Equity's $8.50 estimate as to that cost.

>consumer credit reporting service, and the reasonable value of time spent by the landlord or his or her agent in obtaining information on the applicant. In no case shall the amount of the application screening fee charged by the landlord or his or her agent be greater than thirty dollars ($30) per applicant. The thirty dollar ($30) application screening fee may be adjusted annually by the landlord or his or her agent commensurate with an increase in the Consumer Price Index, beginning on January 1, 1998.

Cal. Civil Code § 1950.6(b). The statute also sets forth the landlord or her agent is required to "provide, personally, or by mail, the applicant with a receipt for the fee paid by the applicant, which receipt shall itemize the out-of-pocket expenses and time spent by the landlord or his or her agent to obtain and process the information about the applicant." Cal. Civil Code § 1950.6(d).

Plaintiff's allegations, which include multiple citations to the foregoing California Civil Code provision, provided Defendant with notice of how to calculate Plaintiff's restitution claim. Defendant Equity's calculations set forth in the Notice of Removal, however, failed to account for the time its staff spent in obtaining screening information for each prospective tenant. The Court finds unreasonable and unsupported by evidence Defendant Equity's assumption of $0 for its staff time to obtain screening information for each applicant. See Ibarra, 775 F.3d at 1199 ("[A] damages assessment may require a chain of reasoning that includes assumptions . . . [but] those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."); Harris, 980 F.3d at 701 (concluding the defendant's assumption that all of the putative class members had worked shifts long enough to qualify them for meal and rest periods lacked any evidentiary support, demonstrating the defendant's amount in controversy calculation was exaggerated and could not support CAFA jurisdiction).

Plaintiff, on the other hand, has submitted her own calculations as to the value of staff time spent obtaining screening information about each applicant, estimating it

10.

would take on average 12 minutes for a property manager to complete this task. (See Mot. at 2; Removal Ollinger Decl. ¶¶ 14-15, Exh. 8-9.) Specifically, Plaintiff submits a receipt received by a prospective tenant applicant from Defendant Equity that values the staff time to obtain screening information at $44.50 per applicant. (See Removal Ollinger Decl. ¶ 15, Exh. 9.) That receipt shows Defendant Equity charged an application fee of $50.50, consisting of $6.00 to obtain a "credit report and other relevant reports" and $44.50 for the "[c]ost of obtaining, processing and verifying results of screening process." (Id.) This evidence undermines considerably Defendant Equity's calculation of $8.50 as its total out of pocket cost to process each rental application, especially given Plaintiff's unambiguous allegations that Claim 5's restitution calculation excluded all of Defendant's out of pocket costs to obtain credit reports and for staff time to obtain screening information for each applicant.

      The Court estimates the amount in controversy for Plaintiff's restitution claim based on the evidence submitted by the parties and draws reasonable assumptions therefrom. See Harris, 980 F.3d at 701 ("The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden."); Ibarra, 775 F.3d at 1198 ("CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."). The Court takes Defendant Equity's $8.50 cost per application to obtain a credit report as some evidence to show its out of pocket costs, but that alone does not present a complete picture as to Defendant Equity's total costs because it fails to account for the value of its staff's time to collect screening information for each applicant. For purposes of this discussion, the Court will take Plaintiff's estimation of 12 minutes of a property manager's time to collect screening information for each applicant as accurate, and consider Plaintiff's evidence of the low range of a California property manager's salary, i.e., $100,885/year or approximately $48.50/hour (see Removal Ollinger Decl.

1  ¶ 14, Exh. 8) to calculate an estimated cost of staff time to collect screening
2  information for each applicant.
3      Such a calculation results in a cost of staff time of $9.70 per applicant
4  (($48.50/hour divided by 60 minutes) x 12 minutes).  $9.70 plus $8.50 comes to
5  $18.20, which would represent Defendant Equity's out of pocket costs per applicant.
6  Subtracting $18.20 from Defendant Equity's average screening fee of $49 comes to
7  $30.80, which would be the amount of restitution sought by Plaintiff per applicant.
8  Assuming the accuracy of Defendant Equity's estimation of having received and
9  processed 135,000 applications from prospective class members during the relevant
10 time period,[4] the Court's best estimate of the amount in controversy as to Plaintiff's
11 restitution claim is $4,158,000 ($135,000 x $30.80).  See Lewis, 627 F.3d at 401.  The
12 preponderance of the evidence before the Court thus shows the $5 million CAFA
13 threshold has not been satisfied based on Plaintiff's Claim 5 for restitution, contrary to
14 Defendant Equity's assumptions in the Notice of Removal.  See Ibarra, 775 F.3d at
15 1198 (after considering the evidence submitted by the parties, "the court then decides
16 where the preponderance lies.").

      **b.**  **Defendant Equity fails to present any evidence of the amount of money it would cost it to issue receipts to the proposed class**

20   Next, Defendant Equity's Notice of Removal states it would cost it a
21 considerable sum to issue receipts to all applicants should the Court grant Plaintiff's
22 request for injunctive relief as to her class claims and that cost, when added to the

---

[4] Plaintiff disputes Defendant Equity's estimation, claiming it overcounts the number of applications by failing to discount the applications it received in paper, which are not at issue in this action.  (See Mot.; Reply.)  The Court does not reach this argument, as it need not.  Defendant Equity has presented some evidence to show paper applications were not included in its calculations and, in any event, even assuming the accuracy of Defendant Equity's estimation, the preponderance of the evidence demonstrates the amount in controversy for Plaintiff's restitution claim falls short of the $5 million CAFA jurisdictional requirement.

amount in controversy calculation, demonstrates the $5 million CAFA threshold has been satisfied. Defendant Equity, however, presents no evidence to demonstrate its costs in this regard. Defendant Equity has failed to meet its burden to demonstrate how this cost would factor into the amount in controversy calculation by a preponderance of the evidence.

### c. Defendant Equity's attorneys' fees calculation is unreasonable

Finally, Defendant Equity's Notice of Removal also calculated the amount in controversy by adding Plaintiff's claim for attorneys' fees using the 25% benchmark that applies to common fund class action settlements. The Court finds this is not a reasonable estimate of the amount in controversy for the attorneys' fees claim here.

The Ninth Circuit has held courts must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in controversy requirement is met. See Fritsch v. Swift Trans. Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018). "[T]he defendant[, however,] retains the burden of providing the amount of future attorneys' fees by a preponderance of the evidence." Id. at 788. Although certain estimates might be reasonable, courts have declined to adopt a per se rule that "the amount of attorneys' fees in controversy in class action [cases] is 25 percent of all other alleged recovery." Id. at 796 (finding percentage-based method as a per se rule is inappropriate).

Here, the Court declines to use the 25% benchmark to estimate the amount in controversy for Plaintiff's claimed attorneys' fees. See Gurzenski v. Delta Air Lines, Inc., No. 2:21-cv-05959-AB (JEMx), 2021 WL 5299240, at *5 (C.D. Cal. Nov. 12, 2021). In Gurzenski, the Court granted a motion to remand and rejected the defendant's proposal to use a 25% benchmark to calculate attorneys' fees for purposes of determining the total amount in controversy, instead concluding the lodestar method was the appropriate means to approximate attorneys' fees for that purpose. Id. As in that case, Plaintiff's claim for attorneys' fees here is based on a fee-shifting

1   statute under California's Unfair Competition Law.  As the Court explained in
2   Gurzenski, "[e]stimating the attorneys' fee by applying the 25% benchmark from the
3   settlement context to the total amount in controversy will usually overstate the fee
4   award plausibly recoverable pursuant to a fee-shifting statute." Id.  The Court
5   likewise concludes here "the 25% benchmark cannot be considered a reasonable
6   proxy for the lodestar for purposes of estimating the amount in controversy." Id.; see
7   also Cardenas v. Asplundh Construction Corp., No. 2:21-cv-09644-RGK-Ex, 2022
8   WL 370960 at *4 (C.D. Cal. Feb. 8, 2022) (declining to apply the 25% benchmark to
9   determine whether claimed attorneys' fees satisfied CAFA's $5 million amount in
10  controversy requirement and concluding the defendant's reliance on the 25%
11  benchmark was too speculative and failed to show its estimation was based on
12  reasonable assumptions).

Plaintiff presents evidence of her counsel Joe Ollinger's hourly rate of $425 and estimates it would take 100 hours to litigate this case.  (See Mot. at 5; Remand Ollinger Decl. ¶ 16.)  In Opposition, Defendant Equity argues this calculation of Plaintiff's attorneys' fees is unreasonable but proffers no evidence of its own of what a lodestar fee would be.  (See Opp'n at 5.)  Even assuming, arguendo, Plaintiff's calculation undercounts her counsel's time ten-fold and her counsel could spend up to 1,000 hours litigating the class action claims in this case, at Ollinger's hourly rate, the maximum lodestar would be $425,000.  Added to the amount in controversy for Plaintiff's restitution claim ($4,158,000), the total amount in controversy would be $4,583,000, which continues to fall short of the CAFA's $5 million threshold.

The Court therefore finds Defendant Equity's estimated amount in controversy is not reasonable, Defendant Equity has failed to meet its burden to demonstrate the Court's subject matter jurisdiction when it removed this action to federal court, and this case must be remanded.

**B.    Motion to Dismiss**

Defendant Equity also moves to dismiss Plaintiff's Claims 1 and 3 through 6 for

1  failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The
2  Court does not reach the merits of this motion, however, because it has concluded it
3  lacks subject matter jurisdiction over Plaintiff's claims and this action must be
4  remanded to state court. Accordingly, the Court **DENIES** the Motion to Dismiss as
5  moot.

6  **V.  CONCLUSION**
7        For the foregoing reasons, the Court **GRANTS** the Motion to Remand. This
8  action shall be remanded to the California Superior Court for Los Angeles County.
9  The Court **DENIES** the Motion to Dismiss as moot.
10 **IT IS SO ORDERED.**

12 Dated: March 7, 2022  
                                HONORABLE ANDRÉ BIROTTE JR.  
                                UNITED STATES DISTRICT COURT JUDGE